UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA CROCKETT,

      Plaintiff,

v.                                             Civil Case No. 20-13207
                                                Honorable Linda V. Parker

GENERAL MOTORS LLC
and LYNN MURRAY,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(C) (ECF NO. 38)

This lawsuit arises from the termination of Plaintiff's employment with Defendant General Motors LLC ("GM"). In an Amended Complaint filed July 21, 2021, Plaintiff asserts race and age discrimination claims against Defendants, although she has since stipulated to the dismissal of her claims against Defendant Lynn Murray.[1] (*See* ECF No. 40.) The matter is presently before the Court on Defendants' motion for summary judgment, filed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (ECF No. 38.) The motion has been fully

---

[1] To the extent Plaintiff appeared to be also asserting a gender discrimination claim (*see* Am. Compl. § III, ECF No. 18 at Pg ID 174), she concedes that it should be dismissed (Pl. Resp. Br. at 8, ECF No. 41 at Pg ID 852).

briefed. (ECF Nos. 41, 42.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.  Standard of Review

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "A party asserting that a fact cannot be or is genuinely disputed" must designate specifically

2

the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.    Factual Background

Plaintiff is an African American woman and over fifty years old. (Am. Compl., ECF No. 18 at Pg ID 166, 180.) In September 2018, GM hired Plaintiff as an intern in its Take 2 Career Re-entry program in which qualified professionals have an opportunity to rejoin the workforce for a three-month internship following a career break. (Pl. Dep. at 61-62, ECF No. 38-2 at Pg ID 352-53; Employment History, ECF No. 38-4 at Pg ID 612.) During her internship, Plaintiff reported to Lynn Murray. (Pl. Dep. at 62-63, ECF No. 38-2 at Pg ID 353-54.)

At the end of the internship, Murray decided to hire Plaintiff as a full-time employee. (12/11/18 email; ECF No. 38-9 at Pg ID 687; 12/10/18 email, ECF No. 38-9 at Pg ID 687.) On February 11, 2019, Plaintiff started as a Project Manager

Design Release Engineer ("DRE") for GM's Power & Signal Distribution Systems ("PSDS") group. (Employment History, ECF No. 38-4 at Pg ID 612; Pl. Dep. at 69-70, ECF No. 38-2 at Pg ID 360-61.) After several weeks in the position, Plaintiff was assigned to door wiring harnesses for light- and heavy-duty pickups. (Pl. Dep. at 83-84, ECF No. 38-2 at Pg ID 374-75.)

As part of her mid-year review, Plaintiff was responsible for completing a Commitment Accountability Plan ("CAP"). (*Id*. at 118-19, Pg ID 409-10.) In the mid-year review, Plaintiff was advised about performance deficiencies with her work objectives, specifically:

- Plaintiff struggled to complete assignments in a timely, high-quality manner and did not to take ownership of her door harness work assignment.

- Plaintiff does not actively pursue issue closure and requires regular reminders/inquiries from her leads, plants and program team.

- Input had been received from several cross functional team members regarding Plaintiff's lack of response and pro-activeness regarding deadlines and did not demonstrate the follow through critical for her role.

- Plaintiff currently does not focus appropriately on achieving desired results through her work efforts.

(2019 Mid-Year CAP at 6, ECF No. 38-5 at Pg ID 620.) Plaintiff attributed her deficiencies to her newness to the position and to her assigned part, and believed

she should have been receiving more support from her superiors. (Pl. Dep. at 122-25, ECF No. 38-2 at Pg ID 413-16.)

Based on her observations and feedback received from internal and external customers, Murray did not believe Plaintiff's performance improved after her mid-year review. (Murray Dep. at 28-31, 38-39, ECF No. 38-12 at Pg ID 731-34, 741-42.) A formal Plan for Improvement ("PFI") was therefore initiated and provided to Plaintiff on November 14, 2019. (*Id.* at 25-26, Pg ID 728-29; PFI, ECF No. 38-7 Pg ID 659.) The PFI identified four areas of deficiency, where Plaintiff was expected to improve:

> (1) Fails to complete assignments in both a timely and high-quality manner. Fails to prioritize workload and core job responsibilities.
>
> (2) Engineering solutions are not well thought out/low quality and need a high level of oversight.
>
> (3) Does not a drive [sic] for results with a sense of ownership or authority.
>
> (4) Fails to appropriately plan workload to successfully accomplish deliverables on time, during normal working hours, and considering other's schedules/availability.

(PFI, ECF No. 38-7 at Pg ID 659; *see also* Pl. Dep. at 207, ECF No. 38-2 at Pg ID 498.) The PFI was to continue until January 28, 2020. (PFI, ECF No. 38-7 at Pg ID 659; Pl. Dep. at 206, ECF No. 38-2 at Pg ID 497.)

As part of the PFI, Murray and representatives from GM's human resources department met weekly with Plaintiff to identify and discuss the deficiencies in the PFI, the status and quality of the specific tasks on which Plaintiff was working, and to provide coaching. (Pl. Dep. at 205-06, 209, ECF No. 38-2 at Pg ID 496-97, 500; PFI Meeting Summary, ECF No. 38-6 at Pg ID 623-657.) Plaintiff continued to underperform despite the PFI. (Lee Aff. ¶ 4, ECF No. 39 at Pg ID 784; Murray Dep. at 54-55, ECF No. 38-12 at Pg ID 757-58.) Therefore, in late January 2020, Murray and Human Resources Business Partner Taylor Lee (then Taylor Irons) decided to terminate Plaintiff's employment. (Lee Aff. ¶¶ 4-6, ECF No. 39 at Pg ID 784; Murray Dep. at 54-55, ECF No. 38-12 at Pg ID 757-58.) However, to enable Plaintiff to retain her benefits longer, GM delayed execution of the decision until February 4.[2] (Lee Aff. ¶ 7, ECF No. 39 at Pg ID 784-85.) Plaintiff was informed of her termination on February 3. (Pl. Dep. at 235, ECF No. 38-2 at Pg ID 526.)

---

[2] Lee explains that if Plaintiff had been terminated when the decision to do so was made, her benefits would have ended on January 31, 2020. (Lee Aff. ¶ 7, ECF No. 39 at Pg ID 784.) By waiting until February 4 to end her employment, Plaintiff's benefits continued until February 28. (*Id.*)

### III. Applicable Law and Analysis

#### A. General Framework for Discrimination Claims

A plaintiff may establish a claim of race or age discrimination through direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (age discrimination); *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (race discrimination). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Plaintiff does not claim to have direct evidence and proceeds as if such evidence is lacking. (Pl. Resp. Br. at 9, ECF No. 41 at Pg ID 853; *see also* Pl. Dep. at 175-77, ECF No. 38-2, Pg ID 466-68.)

In that instance, the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Geiger*, 579 F.3d at 622; *Johnson*, 319 F.3d at 865-66. The plaintiff first must establish a prima facie case of discrimination. *Geiger*, 579 F.3d at 622 (citation omitted); *Johnson*, 319 F.3d at 866. (citation omitted). This requires the plaintiff to show: (1) membership in a protected class; (2) discharge or some other adverse employment action; (3) qualification for the position held; and (4) disparate treatment of a similarly-situated individual outside the protected class. *See Geiger*, 579 F.3d at 622. The

defendant then has the burden of proffering a legitimate, nondiscriminatory reason for its decision. *Johnson*, 319 F.3d at 866 (citation omitted). If the defendant does so, the plaintiff then must prove that the reasons offered by the defendant were a pretext for discrimination. *Id*. (citation omitted).

A plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). The plaintiff must produce "sufficient evidence from which the jury could reasonably reject the defendant['s] explanation and infer that the defendant[] intentionally discriminated against h[er]." *Id*.

Defendants first argue that Plaintiff cannot establish the fourth prong of her prima facie case. But even if Plaintiff sets forth a prima facie case, Defendants maintain that there was a legitimate, non-discriminatory reason for her termination. Defendants assert that Plaintiff cannot show that this reason was pretextual.

### B. Similarly-Situated Employees

To satisfy the fourth prong of her prima facie case, Plaintiff must show that she was "'similarly situated' '*in all of the relevant respects*' to an employee of a different race [or age] who was treated better." *Johnson v. Ohio Dep't of Public Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (emphasis added) (quoting *Gragg v.*

8

*Somerset Tech. Coll.*, 373 F.3d 763, 768 (6th Cir. 2004); *Ercegovich*, v Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff "need not demonstrate an exact correlation with the employee[s] receiving more favorable treatment[.]" *Ercegovich*, 154 F. 3d at 352. Rather, As the Sixth Circuit has advised, a court should consider "whether the employees: (1) engaged in the same conduct, (2) dealt with the same supervisor, and (3) were subject to the same standards." *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Plaintiff fails to offer comparators who were "similarly situated in all of the relevant respects."

Plaintiff offers two examples to support her race discrimination claim. (Pl. Resp. Br. at 10, ECF No. 41 at Pg ID 854.) First, she claims in March or April 2019, after Murray asked Plaintiff a question during a meeting that Plaintiff did not understand, Murray turned to a young, white engineer and said, "Let me ask someone who is smart." (*Id*. (quoting Pl. Dep. at 181, ECF No. 38-2 at Pg ID 472.) Second, Plaintiff refers to Murray's "interrogat[ion]" of her in front of guests at a Christmas party as to why Plaintiff was there, when Murray did not question a younger Indian coworker who also was at the party. (*Id*. (citing Pl. Dep. at 177-80, ECF No. 38-2 at Pg ID 468-71).) During her deposition, Plaintiff also complained that she was singled out when she experienced issues with a particular

9

program but Caucasian engineers, who also had issues with the program, were not. (*See* Pl. Dep. at 236, ECF No. 38-2 at Pg ID 527.)

None of these instances, however, describe situations where a non-African American employee was treated differently for performance problems comparable to those for which Plaintiff was terminated. In other words, Plaintiff's evidence does not show that Defendants treated employees outside her protected class more favorably in response to the same or similar performance deficiencies that led to Plaintiff's termination. While the Sixth Circuit has cautioned courts not to apply too rigid of a standard or to construe "similarly situated" too narrowly, *see Ercegovich*, 154 F.3d at 352, Plaintiff's examples exist at "too high a level of generality" and accepting them as sufficient comparators would render the test "meaningless." *Johnson*, 942 F.3d at 331.

The same is true of the evidence Plaintiff offers to demonstrate discriminatory treatment related to her age:

- Plaintiff was the oldest or second oldest in the group. ([Pl. Dep. at 171-72, ECF No. 38-2 at Pg ID 462-63].)

- While Ms. Murray did not sit down with Plaintiff and teach her how to fill out and complete a time sheet, she did show younger white males how to fill it out. ([*Id.* at 173, Pg ID 464].)

- Ms. Murray would approach Plaintiff to discuss issues which were already being worked on, but would not do so with younger engineers. ([*Id.* at 174, Pg ID 465].)

- Ms. Murray questioned Plaintiff's competence in the middle of the workspace at doing tasks, but did not do that with younger engineers. ([*Id.*].)

- Ms. Murray yelled at Plaintiff publicly about an ECR issue, and yet did not do so publicly with younger engineers. ([*Id.*].)

- Plaintiff submitted a photo for her employee ID card, and Ms. Murray reacted to the photo which was a few years old by saying, "Ooo, who is that?" ([*Id.* at 175, Pg ID 466].)

-

(Pl. Resp. Br. at 11, ECF No. 41 at Pg ID 855.) Notably, none of these examples describe instances where Plaintiff suffered a materially adverse employment action in comparison to employees outside her protected classes. More importantly, they do not demonstrate that younger employees were treated differently (i.e., not terminated) when engaging in the conduct for which Plaintiff was terminated.

As Plaintiff fails to demonstrate a prima facie case of discrimination, this is sufficient to warrant summary judgment in GM's favor. However, even if Plaintiff satisfied her prima facie case, she fails to show that GM's legitimate, non-discriminatory reason for terminating her employment was a pretext for race or age discrimination.

### C. Pretext

Plaintiff's only argument to show pretext is that "every time [she] was offered the opportunity to address the alleged deficiencies, [she] was able to explain or address the alleged deficiencies with examples." (Pl. Resp. Br. at 13,

11

ECF No. 41 at Pg ID 857 (citing Pl. Answer to Discovery Request No. 19, ECF No. 41-8).)[3] Plaintiff fails to development this argument, however. She presents no evidence to support it. "An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. UPS*, 166 F. App'x 783, 791 (6th Cir. 2006) (citing *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). Moreover, Murray made the decision to hire and terminate Plaintiff's employment, making it even more difficult for Plaintiff to demonstrate her case.[4] *See Wexler v. White's Fine Furniture Inc.*, 246 F.3d 856, 866 (6th Cir. 2001).

---

[3] Plaintiff does not attach the answer to discovery request number 19 referenced in her brief. The cited attachment are her Answers to GM's First Set of Interrogatories, which end at question eighteen. (*See* Pl. Resp. Ex. G, ECF No. 41-8.) Nor does she identify with specificity the evidence where she explained or addressed the alleged deficiencies.

[4] In her response brief, Plaintiff argues that Murray was not the ultimate decision maker with respect to her termination. (Pl. Resp. Br. at 14, ECF No. 41 at Pg ID 858.) This argument only undercuts Plaintiff's claims further, however, as the only evidence she offers to support her discrimination claims is *Murray*'s treatment of her. (*See id.* at 10-11, Pg ID 855-56.) "Actions by nondecisionmakers cannot alone prove pretext." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (en banc) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)).

## IV.   Conclusion

For the reasons set forth above, the Court concludes that Plaintiff fails to establish a prima facie case of race or age discrimination.  But even if Plaintiff made a prima facie showing of discrimination, she fails to demonstrate that Defendants' legitimate, non-discriminatory reason for terminating her employment was a pretext for race or age discrimination.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 38) is **GRANTED**.

                                                   s/ Linda V. Parker
                                                   LINDA V. PARKER
                                                   U.S. DISTRICT JUDGE

Dated: January 30, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 30, 2023, by electronic and/or U.S. First Class mail.

                                                   s/Aaron Flanigan
                                                   Case Manager